## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**COX OPERATING, LLC**                                    **CIVIL ACTION**

**VERSUS**                                               **NO: 20-2845**
                                                        **c/w 20-2871**

**ATINA M/V ET AL.**                                     **SECTION "H"**
                                                        **(Applies to all cases)**

### ORDER AND REASONS

Before the Court is Cox Operating, LLC's Motion to Increase Security and Require Surety Bond (Doc. 26).  For the following reasons, the Motion is GRANTED IN PART.

### BACKGROUND

On October 18, 2020, Cox Operating, LLC ("Cox") moved this Court for the issuance of a Warrant of Arrest on the M/V ATINA ("ATINA") in connection with damages it incurred when the ATINA allided with its offshore platform ("the Arrest Action").[1]  On October 21, 2020, the ATINA was arrested. In response, Hanzhou 1 Ltd., as owner of the ATINA; Atina Maritime Limited, as

---

[1] Case No. 20-2845.

1

bareboat charterer; and Besiktas Likid Tasimacilik Denizcilik Ticaret A.S. and Ciner Ship Management, as managers (collectively "Petitioners"), filed a Limitation of Liability action ("the Limitation Action").[2] The two matters were consolidated before this Court. In the Limitation Action, Petitioners furnished a Letter of Undertaking on behalf of the vessel owner by The Standard Club UK Ltd. in the amount of $40,651,794.88, representing the value of the M/V ATINA and her pending freight.

Thereafter, Cox filed the instant motion requesting an increase in the amount of security provided by Petitioners and an order requiring that a surety bond be furnished instead of a Letter of Undertaking. Cox argues that the value of the ATINA and her freight exceeds the $40,651,794.88 stipulated by Petitioners. A hearing on the value of the ATINA and her freight was held on April 27 and 28, 2021. The parties thereafter filed additional briefing on Cox's request for a surety bond to replace the Letter of Undertaking. In addition, the Louisiana Oil and Gas Association and the State of Louisiana each filed amicus curiae briefs on the surety issue. This Court will first make findings of fact and conclusions of law regarding the value of the ATINA before turning to the surety issue.

## I.    Value of the ATINA and Her Freight

"In a limitation action, security posted should reflect the fair market value of the vessel and any pending freight at the end of the voyage."[3] Comparable and contemporaneous sales are considered the best evidence from

---

[2] Case No. 20-2871.

[3] *Ergon-St. James, Inc. v. Privocean M/V*, No. CV 15-1121, 2015 WL 9688148, at *1 (E.D. La. Aug. 21, 2015), *aff'd sub nom. Ergon–St. James, Inc. v. Privocean M/V*, 654 F. App'x 184 (5th Cir. 2016).

which to establish market value.[4] Where there are insufficient sales to establish market value, "other evidence such as replacement cost, depreciation, expert opinion and the amount of insurance can also be considered to determine the value of the lost vessel."[5]

The ATINA is a 159,000 dead weight ton tanker, which falls into the suezmax class of tankers, built in 2015 by Bohai Shipbuilding Heavy Industries in China. At the hearing, Cox presented the expert opinion of a maritime appraiser, Norman Dufour of Dufour Laskay Surveying, who opined that the value of the ATINA and her freight at the time of the allision in October 2020 was $49,832,144. In reaching this conclusion, Mr. Dufour performed both a cost analysis and a comparable sales analysis. The Court finds, however, that the sales used by Mr. Dufour in his analyses were not appropriate comparators. Several of the vessels were significantly different in age (10, 13, and 14 years) to the ATINA and many were built in different countries. Both of Petitioners' experts confirmed that vessels built in China, like the ATINA, are worth at least 10 % less than those built in South Korea or Japan. In addition, the Court did not find Mr. Dufour's opinion credible because of his lack of experience in appraising suezmax tankers like the ATINA.

On the other hand, Petitioners offered the opinion of vessel sale and purchase broker Paul Wilcox of CW Kellock, an expert in the valuation of oceangoing vessels, who valued the ATINA at close to $40 million. This Court found Mr. Wilcox's opinion to be most credible. Mr. Wilcox presented

---

[4] *Id.*

[5] King Fisher Marine Serv., Inc. v. NP Sunbonnet, 724 F.2d 1181, 1185 (5th Cir. 1984).

comparators more similar in age to the ATINA. He adjusted the sale price of those comparators at a 5% per year depreciation rate and utilized a 10% deduction on the price of vessels built in South Korea due to their superior quality to those built in China.[6]

For example, the Advantage Sky is a suezmax tanker built in China in 2010 that sold at auction for $25,300,000 in August 2020. Adjusting for depreciation, the auction sale, and the market decline between August and October 2020, Mr. Wilcox estimated that the ATINA would likely have sold in October 2020 for between $35.5 million and $38 million. Similarly, he considered the December 2020 sale of the Energy Triumph, built in South Korea in 2018, for $45 million. Adjusting for depreciation, build quality, and market changes, Mr. Wilcox determined a value of the ATINA in October 2020 of about $36 million. He also considered the sale of two vessels built in South Korea in 2020 and sold in August 2020 for $63.5 million each. Adjusting for depreciation, build quality, and market changes, he determined a sale price of the ATINA in October 2020 to be about $40,950,000. Finally, Mr. Wilcox considered a 2017 Chinese-built suezmax tanker that was listed for sale for $44 million in November 2020. Adjusting for age, this points to a value of the ATINA at $40 million. Limitation Petitioners also presented the expert opinion of another sale and purchase broker, Christian Pierot of Jacq. Peirot and Sons, who agreed that he would be comfortable with a valuation of up to $40 million.

---

[6] Petitioners' other vessel valuation expert, Christian Pierot, also used a depreciation rate of 5% per year and opined that a deduction of anywhere from 10 to 15% was appropriate to account for the inferior build quality of Chinese-built vessels as compare to those built in South Korea.

Accordingly, this Court finds a fair market value of the ATINA at $40 million to be reasonable.

Next, the Court must deduct the cost of the repairs the ATINA needed following the allision. Shortly after the incident, a surveyor estimated the cost to repair the damage to the ATINA at approximately $500,000. The repairs were thereafter completed at a cost of $500,756.26. Cox argues that this amount should be reduced by a portion of the cost of dry docking because the repairs could have waited until the ATINA's next regularly scheduled dry docking. At the hearing, however, Petitioners established that the special dry docking became necessary when it became difficult to find charterers for the ATINA in light of her condition. Accordingly, the Court deducts the full repair cost from the ATINA's fair market value. The value of the ATINA after the allision was therefore $39,499,243.74.

Finally, the Court must consider the value of the pending freight on the ATINA at the time of the allision on October 17, 2020. "'[P]ending freight' is the 'price paid for the entire voyage during which the casualty occurs.'"[7] "The Supreme Court has further explained that 'real object' of the limitation statute is 'to limit the liability of vessel owners to their interest in the adventure.'"[8]

It is undisputed that the ATINA completed a voyage under a sub-time charter with Equinor ASA ("Equinor") when she discharged her cargo at the Nustar Terminal in St. James, Louisiana on October 16, 2020. Equinor had a sub-charter agreement with Koch Shipping Pte. Ltd. ("Koch"), the time

---

[7] Matter of Falcon Inland, Inc., No. 97-1034, 1998 WL 185222, at *1 (E.D. La. Apr. 16, 1998) (quoting Main v. Williams, 152 U.S. 122 (1894)).

[8] In Matter of Offshore Specialty Fabricators, Inc., No. 01-2227, 2002 WL 827398, at *5 (E.D. La. Apr. 30, 2002) (quoting *Main*, 152 US at 131.)

charterer of the ATINA, and had pre-paid for 30 days of charter hire ending on October 25. At the hearing, Petitioners presented evidence that the ATINA had been instructed by Equinor that after she completed her voyage on October 16, 2020, she should head to the Southwest Pass in the Gulf of Mexico to await instructions regarding her next voyage. The allision occurred on October 17, 2020 while the ATINA was navigating around the Southwest Pass. After the allision, the ATINA was put off-hire for a period of six days. Thereafter, the ATINA was instructed to go to Galveston where she concluded her time charter with Equinor. She then began a voyage under a sub-charter agreement between Koch and Stena Bulk dated October 26, 2020. That voyage ended in South Korea in early January 2021.

The parties dispute whether the ATINA had begun the voyage under the Koch/Stena Bulk sub-charter agreement prior to the allision. This Court finds that the evidence presented at the hearing showed that the ATINA had not received instructions for her next voyage prior to the allision and that Koch and Stena Bulk did not enter into a sub-charter agreement until several days after the allision. Accordingly, the Court agrees with Petitioners' position that the ATINA was not on the Stena Bulk voyage at the time of the allision. Rather, the only freight pending at the time of the allision was the charter hire that Equinor had pre-paid through October 25, 2020 in the amount of $151,794.88. Equinor later deducted $118,230.42 for the period that the ATINA was off-hire after the allision. Accordingly, the Court calculates the pending freight at $33,564.46.[9] The value of the ATINA and her pending freight at the time of the

---

[9] *See Ergon-St. James, Inc.*, 2015 WL 9688148, at *3 (subtracting charter rate for off-hire period).

allision was therefore $39,532,808.20. Petitioners need not increase the
security provided.

## II.  Surety Bond

Next, Cox requests that the security provided by the Limitation
Petitioners be in the form of an approved surety bond rather than the Letter
of Undertaking ("LOU"). Cox points out that Petitioners are Turkish entities
and have offered as security an informal LOU from a foreign insurer not
present in this jurisdiction. Cox does not consent to accept the LOU as
sufficient security in this matter and seeks an order requiring Petitioners to
post a bond from a domestic surety that is regulated in the United States and
against whom a judgment may be enforced in the United States.

Supplemental Rule F of the Federal Rules of Civil Procedure provides
that, in limitation of liability proceedings, "[t]he owner . . . shall deposit with
the court, for the benefit of claimants, a sum equal to the amount or value of
the owner's interest in the vessel and pending freight, or approved security
therefor, as the court may from time to time fix as necessary." Cox argues that
where the sole claimant does not consent to accept an LOU as security, the
vessel owner must post a bond from a federally approved corporate surety.[10]

---

[10] In so arguing, Cox relies on *Koch Ref. Co. v. M/V Jennifer Boudreaux*, No. 87-5661,
1993 WL 92515, at *2 (E.D. La. Mar. 23, 1993) and *Thyssen, Inc. v. M/V SENA DENIZ*, No.
CIV.A.00-3455, 2000 WL 1772652, at *1 (E.D. La. Nov. 30, 2000).

This Court does not agree that any such per se rule exists. Rather, the Court has an "absolute right to determine what constitutes approved security."[11]

That said, this Court finds compelling Cox's arguments regarding the need for a surety bond in this particular case. Cox, a U.S. oil and gas company, alleges that its damages from the allision potentially exceed $225 million. Limitation Petitioners are from Turkey and have offered only an informal LOU from The Standard Club UK Ltd, an insurer based in England and not regulated by the United States, to secure the limitation fund of about $40 million. Neither Petitioners nor The Standard Club have any assets in this district against which Cox could enforce a judgment. The Standard Club is not subject to any of the myriad requirements set out by U.S. and Louisiana law regulating corporate sureties for the protection of the beneficiaries of the security.

The Louisiana Oil & Gas Association ("LOGA") and the State of Louisiana each filed amicus curiae briefs pointing out their interests in requiring Petitioners to provide a bond from an approved corporate surety. Both briefs explained the risk to the State's oil and gas operations, economy, and environment when a foreign vessel causes damage to an oil platform off the coast of Louisiana. The State argued that a vessel owner who causes damage to an oil platform "should ensure rock-solid financial security adequate to address the oil and gas industry's obligations," such as decommissioning

---

[11] *See* Matter of A & J Towing, Inc., 1997 WL 289396, at *2 (E.D.La 1997); Karim v. Finch Shipping Co., No. CIV. A. 95-4169, 1998 WL 713396, at *1 (E.D. La. 1998*), aff'd sub nom*. Karim v. Finch Shipping Co., 177 F.3d 978 (5th Cir. 1999).

platforms and wells, oil spill cleanup, and plant and wildlife restoration. It recognized that:

> [A] default or denial of coverage would not only hurt the oil and gas operator but also the citizens of Louisiana who face the loss of revenue from a shut-in production platform, the environmental risks posed by a damaged platform (and any activities necessary to repair it), and the ultimate risk of insufficient capital to ensure the platform is safely put back in service or decommissioned.

Given the high value of this case, the foreign Petitioners and insurer, the lack of assets of Petitioners or their insurer in this district, and Cox's refusal to consent to the LOU, this Court finds that the LOU is not approved security pursuant to Supplemental Rule F. Limitation Petitioners must provide a corporate surety bond to secure the limitation fund.

## CONCLUSION

For the foregoing reasons, this Motion is GRANTED IN PART. The value of the M/V ATINA and her pending freight at the time of the allision at issue was $39,532,808.20, and Cox's Motion for Increased Security is therefore DENIED. Cox's Motion to require a surety bond is GRANTED, and IT IS ORDERED that Limitation Petitioners provide a corporate surety bond to secure the limitation fund within 30 days of this Order.

New Orleans, Louisiana this 27th day of August, 2021.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

9