**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **COX OPERATING, L.L.C.**<br><br>**VERSUS**<br><br>**M/V ATINA, Et Al** | **CIVIL ACTION NO:  2:20-cv-02845**<br>**c/w 2:20-cv-02871**<br><br>**DISTRICT JUDGE**<br>**HON. JANE TRICHE MILAZZO**<br><br>**MAGISTRATE JUDGE**<br>**HON. DONNA PHILLIPS CURRAULT**<br><br>**APPLIES TO ALL CASES** |

**ASSOCIATED BRANCH PILOTS OF THE PORT**
**OF NEW ORLEANS, LLC'S WITNESS AND EXHIBIT LIST**

**NOW INTO COURT**, through undersigned counsel, comes third-party defendant, Associated Branch Pilots of the Port of New Orleans, LLC ("ABP"), who respectfully submits the following list of witnesses who may be called and exhibits that may be introduced at trial in accordance with this Court's Scheduling Order:

**WITNESS LIST**

1. Capt. F. Onür Hürmüzlü

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, policies and procedures of the Atina interests, the navigation of the M/T ATINA,  his employment with and resignation/termination from Besiktas, the facts and circumstances of his departure from Istanbul and his arrival to the vessel, information relating to the development and/or implementation of and/or compliance with the passage plan in effect at the time of the incident, including, but not limited to, the selection of the vessel's anchorage location, his decision to deviate from the subject anchor plan, communications with ABP and/or any other person or entity relating to the pilotage of the vessel by ABP, his knowledge of and compliance with the Besiktas SMS Manuals, his knowledge of the Inland Rules of Navigation, Code of Federal Regulations and/or the U.S. Coast Pilot 5, details surrounding the Master handover immediately preceding the incident in suit, post-incident interviews with the USCG, NTSB, and/or Besiktas, and any other relevant testimony.

2.   Bertan Pisirici

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, policies and procedures of the Atina interests, the navigation of the M/T ATINA, information relating to the development and/or implementation of the passage plan in effect at the time of the incident, including, but not limited to, the selection of the vessel's anchorage location, communications with ABP and/or any other person or entity relating to the pilotage of the vessel by ABP, anchoring of the vessel on the night of the incident, bridge communications during the anchoring on the night of the vessel, details surrounding the Master handover immediately preceding the incident in suit, the condition/demeanor of Capt. Edin and Captain Hürmüzlü during the subject voyage, and any other relevant testimony.

3.   Chief Officer Serhan Atac

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, the navigation of the M/T ATINA, details surrounding the Master handover immediately preceding the incident in suit, the development and implementation of the passage plan in effect at the time of the incident, the demeanor/appearance of Capt. Edin in the days leading up to the incident and the demeanor/appearance of Capt. Hürmüzlü upon his arrival to the vessel, the anchoring of the vessel on the night of the incident, and any other relevant testimony.

4.   Kenan Bayar

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, the navigation of the M/T ATINA, details surrounding the Master handover immediately preceding the incident in suit, the development and implementation of the passage plan in effect at the time of the incident, the demeanor/appearance of Capt. Edin in the days leading up to the incident and the demeanor/appearance of Capt. Hürmüzlü upon his arrival to the vessel, the anchoring of the vessel on the night of the incident, and any other relevant testimony.

5.   Capt. Paul Vogt, Jr.

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, the pilotage services rendered to the M/T ATINA on the day of the incident, knowledge of the M/T ATINA passage plan and anticipated anchorage location, conversations and interactions with the M/T ATINA bridge crew during pilotage, observations of the M/T ATINA crew, including, but not limited to, Capt. Hürmüzülü and Capt. Ein, the master exchange on the day of the incident, the scope of pilot services and obligations of the Bar Pilots to vessels, operations of the Bar Pilots in and around the SW Pass, SW Pass fairway, and SW Pass anchorage, and any other relevant testimony.

6.  Ben Kararick

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, all communications between the ABP/Bar Pilots and the M/T ATINA on the day of the incident, the scope of pilot services and obligations of the Bar Pilots to vessels, operations of the Bar Pilots in and around the SW Pass, SW Pass fairway, and SW Pass anchorage, and any other relevant testimony.

7.  Capt. Jeffrey Robichaux

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, all communications between the ABP/Bar Pilots regarding the M/T ATINA's position near the SW Pass sea buoy on the day of the incident.

8.  Capt. Bryant Badeaux

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, all communications between the ABP/Bar Pilots regarding the M/T ATINA's position near the SW Pass sea buoy on the day of the incident.

9.  Capt. Ayhan Edin

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, policies and procedures of the Atina interests, the navigation of the M/T ATINA, the alleged incident, his employment with and resignation/termination from Besiktas, information relating to the development and/or implementation of the passage plan in effect at the time of the incident, including, but not limited to, the selection of the vessel's anchorage location, communications with ABP and/or any other person or entity relating to the pilotage of the vessel by ABP, details surrounding the Master handover immediately preceding the incident in suit, and any other relevant testimony.

10. Yusuf Sezer

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, policies and procedures of the Atina interests relating to crew management, work/rest, and captain handover, coordination and approval of Capt. Hürmüzülü's travel from Istanbul to the vessel, pre-incident communications with Capt. Edin, communications with the ERT regarding Capt. Edin's removal from the vessel, his role on the ERT as it relates to the subject incident, communications with GAC and/or Besiktas regarding Capt. Er's visa, and any other relevant testimony.

11. Salih Andac, Chief Engineer

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, the navigation of the M/T ATINA, details surrounding the Master handover immediately preceding the incident in suit, the development and implementation of the passage plan in

effect at the time of the incident, the demeanor/appearance of Capt. Edin in the days leading up to the incident and the demeanor/appearance of Capt. Hürmüzlü upon his arrival to the vessel, the anchoring of the vessel on the night of the incident, and any other relevant testimony.

12. Selim Durmak, Second Engineer

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, the navigation of the M/T ATINA, details surrounding the Master handover immediately preceding the incident in suit, the development and implementation of the passage plan in effect at the time of the incident, the demeanor/appearance of Capt. Edin in the days leading up to the incident and the demeanor/appearance of Capt. Hürmüzlü upon his arrival to the vessel, the anchoring of the vessel on the night of the incident, and any other relevant testimony.

13. Okan Yuksel, Bosun

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, the navigation of the M/T ATINA, details surrounding the Master handover immediately preceding the incident in suit, the development and implementation of the passage plan in effect at the time of the incident, the demeanor/appearance of Capt. Edin in the days leading up to the incident and the demeanor/appearance of Capt. Hürmüzlü upon his arrival to the vessel, the anchoring of the vessel on the night of the incident, and any other relevant testimony.

14. Capt. Sadik Er

Fact and corporate witness to testify regarding the facts and circumstances surrounding the incident in suit, policies and procedures of the Atina interests, implementation and enforcement of those procedures, the facts and circumstances of Capt. Edin's resignation/termination from Besiktas, the decision to allow the vessel to leave the NuStar Terminal, communications with Besiktas and GAC regarding his visa, the facts and circumstances of the alleged incident and his post-incident investigation of same, the issuance of all Besiktas incident reports and communications with oil companies regarding same, his employment with the Atina interests, his role as a member of the Besiktas Emergency Response Team ("ERT") as it relates to the subject incident, details surrounding the Master handover immediately preceding the incident in suit, and any other relevant testimony.

15. Capt. Syed Shahid Akhtar

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, any relevant events preceding the alleged incident, the SIRE inspection of the M/T ATINA preceding the incident, his interactions with Capt. Eden and Capt. Er relating to the SIRE inspection of the vessel, his post-inspection communications with Besiktas, and any other relevant testimony.

16. Any and all other persons aboard the M/T ATINA at any time between October 14, 2020 and October 20, 2020.

17. Burcu Sahin

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, policies and procedures of the Atina interests relating to crew management, work/rest, and captain handover, coordination and approval of Capt. Hürmüzülü's travel from Istanbul to the vessel, pre-incident communications with Capt. Edin, communications with the ERT regarding Capt. Edin's removal from the vessel, communications with GAC and/or Besiktas regarding Capt. Er's visa, and any other relevant testimony.

18. Capt. Olcay Kazal

Fact and corporate witness to testify regarding the facts and circumstances surrounding the incident in suit, policies and procedures of the Atina interests, implementation and enforcement of same, the navigation of the M/T ATINA, the alleged incident, his role on the ERT, communications with Besiktas and/or the ERT regarding the decision to remove and/or replace Capt. Edin from the vessel, employment with the Atina interests, Capt. Hürmüzülü's travel arrangements from Istanbul to the vessel and how those travel arrangements complied with/violated various provisions of the Besiktas Safety Management System, the enforceability of industry and/or international policies, rules, and/or guidelines including, but not limited to those relating to work/rest, master authority, and/or master handover, and the incorporation of same into the Besiktas Safety Management System, the Master handover immediately preceding the incident in suit, all Besiktas incident reports issued in connection with the subject incident and communications with the oil companies regarding same, and any other relevant testimony.

19. Capt. Adil Ozkan

Fact and corporate witness to testify regarding the facts and circumstances surrounding the incident in suit, policies and procedures of the Atina interests, implementation and enforcement of same, the navigation of the M/T ATINA, the alleged incident, his role on the ERT, communications with Besiktas and/or the ERT regarding the decision to remove and/or replace Capt. Edin from the vessel, employment with the Atina interests, Capt. Hürmüzülü's travel arrangements from Istanbul to the vessel and how those travel arrangements complied with/violated various provisions of the Besiktas Safety Management System, the enforceability of industry and/or international policies, rules, and/or guidelines including, but not limited to those relating to work/rest, master authority, and/or master handover, and the incorporation of same into the Besiktas Safety Management System, the Master handover immediately preceding the incident in suit, all Besiktas incident reports issued in connection with the subject incident and communications with the oil companies regarding same, and any other relevant testimony.

20. Richard Davis

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, the operations of the Cox platform immediately preceding the incident, the alleged incident, Cox's post-incident investigation, and any other relevant testimony.

21. Any and all other persons aboard the Cox platform at the time of the alleged incident.

22. Vincent Monica

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, communications with Besiktas relating to the travel arrangements for Capt. Edin,  Capt. Er, and/or Capt. Hürmüzülü, communications relating to Capt. Er's visa and the possibility of Capt. Er assuming command of the vessel prior to the incident, communications with the ABP and/or Bar Pilots, the weather conditions in the days leading up to the incident and how those conditions affected the timing and/or location of the pilot exchange, his employment with GAC North America as it relates to the facts and circumstances surrounding the incident in suit, and any other relevant testimony.

23. Gokhan Orcuc

Fact witness to testify regarding the facts and circumstances surrounding the incident in suit, policies and procedures of Ciner relating to the incident, Ciner's knowledge of the facts and circumstances of the incident, Ciner's post-incident investigation and/or party submission to the NTSB, and any other relevant testimony.

24. Corporate representative(s) of Hanzhou 1 Ltd.

Corporate representative to testify regarding the ownership, operation, charter, and/or management of the M/T ATINA related to the incident in suit, its policies and procedures, its employees and employment of any third parties of interest to the incident in suit, the duties and responsibilities of the Master of the M/T ATINA, the alleged incident and its investigation of same, any knowledge of facts and circumstances of the events leading up to the incident in suit, and any other relevant testimony.

25. Corporate representative(s) of Ciner Ship Management

Corporate representative to testify regarding the ownership, operation, charter, and/or management of the M/T ATINA related to the incident in suit, its policies and procedures, its employees and employment of any third parties of interest to the incident in suit, the duties and responsibilities of the Master of the M/T ATINA, any post-incident investigation conducted by or on behalf of Ciner, Ciner's, knowledge of facts and circumstances of the events leading up to the incident in suit, Ciner's contractual and/or commercial relationship with Besiktas, Koch, Equinor, Atina Maritime, and/or Hanzhou, Ciner's involvement with and/or approval of Capt. Hürmüzlü travel arrangements and/or Besiktas' decision to replace Capt. Edin with Capt. Hürmüzlü,  and any other relevant testimony.

26. Corporate representative(s) of Besiktas Likid Tasimacilik Denizcilik Ticaret A.S.

Corporate representative to testify regarding the ownership, operation, charter, and/or management of the M/T ATINA related to the incident in suit, its policies and procedures, its employees and employment of any third parties of interest to the incident in suit, the duties and responsibilities of the Master of the M/T ATINA, the alleged incident and its investigation of same, any knowledge of facts and circumstances of the events leading up to the incident in suit, and any other relevant testimony.

27. Corporate representative(s) of Atina Maritime Limited

Corporate representative to testify regarding the ownership, operation, charter, and/or management of the M/T ATINA related to the incident in suit, its policies and procedures, its employees and employment of any third parties of interest to the incident in suit, the duties and responsibilities of the Master of the M/T ATINA, the alleged incident and its investigation of same, any knowledge of facts and circumstances of the events leading up to the incident in suit, and any other relevant testimony.

28. Corporate representative(s) of Koch Shipping PTE LTD

Corporate representative to testify regarding the ownership, operation, charter, and/or management of the M/T ATINA related to the incident in suit, its policies and procedures, its employees and employment of any third parties of interest to the incident in suit, the duties and responsibilities of the Master of the M/T ATINA, the alleged incident and its investigation of same, any knowledge of facts and circumstances of the events leading up to the incident in suit, and any other relevant testimony.

29. Corporate representative(s) of Equinor Marketing & Trading

Corporate representative to testify regarding the ownership, operation, charter, and/or management of the M/T ATINA related to the incident in suit, its policies and procedures, its employees and employment of any third parties of interest to the incident in suit, the duties and responsibilities of the Master of the M/T ATINA, the alleged incident and its investigation of same, any knowledge of facts and circumstances of the events leading up to the incident in suit, and any other relevant testimony.

30. Corporate representative(s) of GAC North America

Corporate representative to testify regarding the agency and/or management of the M/T ATINA related to the incident in suit, its policies and procedures, its employees and employment of any third parties of interest to the incident in suit, the alleged incident and its investigation of same, any knowledge of facts and circumstances of the events leading up to the incident in suit, and any other relevant testimony.

31. Corporate representative(s) of NORD-SUD Shipping, Inc.

Corporate representative to testify regarding the agency and/or management of the M/T ATINA related to the incident in suit, its policies and procedures, its employees and employment of any third parties of interest to the incident in suit, the alleged incident and its investigation of same, any knowledge of facts and circumstances of the events leading up to the incident in suit, and any other relevant testimony.

32. Corporate representative(s) of Oceaneering International.

Corporate representative to testify regarding the inspection of Cox's alleged damages to the platform and any other relevant testimony.

33. Corporate representative(s) of Cox Operating, LLC.

Corporate representative to testify regarding the incident in suit, Cox's damages, if any, sustained as a result of the incident, Cox's asset retirement obligations, Cox's operations, Cox's operations of the platform at issue, and any other relevant testimony.

34. Corporate representative(s) of the ABP

Corporate representative to testify regarding the incident in suit, the relationship between the Bar Pilots, the ABP, and MIPSI, the pilotage of the vessel prior to the incident,  pre-and post-incident communications between the ABP and the vessel, pilotage services rendered in and around Southwest Pass, including, but not limited to, the Southwest Pass Fairway and Southwest Pass Anchorage, policies, procedures,  and customs relating to the boarding/disembarkation of Bar Pilots on vessels navigating in and about the Mississippi River and/or Southwest Pass, and any other relevant testimony.

35. Corporate representative(s) of Maritime Pilot Services, LLC ("MIPSI")

Corporate representative to testify regarding the incident in suit, the relationship between the Bar Pilots, the ABP, and MIPSI, the alleged incident, the pilotage of the vessel the day before the incident,  pre-and post-incident communications between the ABP and the vessel, pilotage services rendered in and around Southwest Pass, including, but not limited to, the Southwest Pass Fairway and Southwest Pass Anchorage, policies, procedures, and customs relating to the boarding/disembarkation of Bar Pilots on vessels navigating in and about the Mississippi River and/or Southwest Pass, and any other relevant testimony.

36. Representatives and/or employees of any and all companies directly identified by any other party, disclosed in any documents, and/or produced by any party to this litigation.

37. Chris Caddell
    Production Loss/Damages Expert
    Spire Consulting Group
    1 Greenway Plaza

Suite 310
Houston, TX 77046

Mr. Caddell will testify regarding his opinions of Cox's pre- and post- damage of the platform and related wells, Cox's asset retirement obligations, and Cox's damages sustained as a result of the incident in suit, including, but not limited to, its alleged delayed production damages, lost production damages, lease operating expenses, repair costs, and reserve value, Cox's failure to mitigate such damages, and any other relevant testimony.

38. Capt. Prentice "Skip" Strong
    Navigation/Liability Expert
    Independent Maritime Consulting, LLC
    500 NE 25th Street
    Suite 10
    Pompano Beach, FL 33064

Capt. Strong will testify regarding his opinions of the navigation and anchoring of the M/T ATINA on the date of the incident in suit, Besiktas' safety policies and procedures relating to work/rest, master handover, master authority, navigation, and anchoring, the facts/circumstances of the subject incident, communications between the ABP and the vessel on the night/day of the incident, and any other relevant testimony.

39. Capt. Marc. A. Fazioli and Capt. Keith Dean
    Navigation/Liability Expert on behalf of Cox Operating, LLC
    3D Marine USA, Inc.
    12411 Donna Lane
    Houston, TX 77067

Capt. Fazioli and/or Capt. Dean will testify regarding his opinions of the navigation of the M/T ATINA on the date of the incident in suit, the duties, responsibilities, and authority of the Master of the M/T ATINA, Besiktas' safety policies and procedures relating to work/rest, master handover, master authority, navigation, and anchoring, the facts/circumstances of the subject incident and any other relevant testimony.

40. Representative of TNOLA Languages
    Translation Consultant
    3401 St. Claude Ave.
    New Orleans, LA 70117

A representative to testify as needed for purposes of authenticating any translated documents relevant to the incident in suit and any other relevant testimony.

41. Robert D. Bartlett
    Metallurgical/Civil Engineering Expert on behalf of the Limitation Petitioners
    Bartlett Engineering

Mr. Bartlett will testify regarding his opinions of the condition of Cox's platform before and after the allision, Cox's alleged post-allision damage of the platform and related wells, and Cox's damages sustained as a result of the incident in suit, including, but not limited to, its alleged repair costs, Cox's failure to mitigate such damages, and any other relevant testimony.

42. Michael F. McKenzie
Petroleum and Reservoir Engineering Expert on behalf of the Limitation Petitioners
D-O-R Lease Service, Inc.

Mr. McKenzie will testify regarding his opinions on the platform's pre- and post-allision production, Cox's pre- and post- damage of the platform and related wells, Cox's asset retirement obligations, and Cox's damages sustained as a result of the incident in suit, including, but not limited to, its alleged delayed production damages, lost production damages, lease operating expenses, repair costs, and reserve value, Cox's failure to mitigate such damages, and any other relevant testimony.

43. Patrick S. Ottinger

Legal Expert in the oil and gas industry on behalf of the Limitation Petitioners
Ottinger Hebert LLC

Mr. Ottinger will testify regarding his opinions on the legal ownership of the platform and all wells and fields Cox alleges were affected by the allision, and any other relevant testimony.

44. Darrell Barker, William LeBoeuf, David Hua, Alex Yang, Dan Humphreys and/or Andrew Buckley
Engineering Experts on behalf of the Limitation Petitioners
ABS Group

Mr. Barker and/or Mr. Hua (or another member of the ABS Group) will testify regarding their opinions on the alleged structural damage of the platform, repair plans, their damages analysis, and Cox's damages sustained as a result of the incident in suit, including, but not limited to, its alleged delayed production damages, lost production damages, repair costs, and reserve value, Cox's failure to mitigate such damages, and any other relevant testimony.

45. Sean Verret and/or Matthew Couch
Engineering Experts on behalf of the Limitation Petitioners
Verrified Engineering

Mr. Verret and/or Mr. Couch will testify regarding his opinions on the permitting process for production, resumption, and re-manning of the Cox platform post-allision, and Cox's damages sustained as a result of the incident in suit, including, but not limited to, its alleged

delayed production damages, lost production damages, repair costs, and reserve value, Cox's failure to mitigate such damages, and any other relevant testimony.

46. Steve Clavin
Engineering Expert on behalf of the Limitation Petitioners
Waldemar S. Nelson and Company

Mr. Clavin will testify regarding his opinions on his inspection of the equipment aboard the Cox platform and its condition pre- and post-allision, and Cox's damages sustained as a result of the incident in suit, including, but not limited to, repair costs, replacement costs, Cox's failure to mitigate such damages, and any other relevant testimony.

47. Any witness listed or called by any other party;

48. Any expert witness retained by any other party in this proceeding;

49. Any witness later identified through discovery;

50. Any witness needed to introduce demonstrative evidence;

51. Any witness needed for rebuttal or impeachment;

52. Any witness needed for authentication of any translation of any document listed in any party's exhibit list; and

53. Any witness needed to authenticate any document or evidence.

ABP reserves the right to amend this Witness List as discovery is ongoing.

## **EXHIBIT LIST**

1. Transcript of NTSB Interview of Capt. Hürmüzlü (ABP 1-36), *Deposition Ex. No. 42*;

2. Transcript of NTSB Interview of Bertan Pisirici (ABP 37-49);

3. Transcript of NTSB Interview of Capt. Paul Vogt (ABP 50-111);

4. English Translation of M/T ATINA VDR Bridge Communications Recording (ABP 112-122), *Deposition Ex. No. 27*;

5. M/T ATINA VDR Bridge Communications Recording;

6. ECDIS Screenshots (ABP 172-175 or Bates 172-175), *Deposition Ex. No. 48*;

7. Translations of VDR Communication Files from M/T ATINA Bridge (ABP 176-277);

8. Translated Detail Interview Officer Form (ABP 278-302);

9.  Untranslated Detail Interview Officer Form (ATINA 3034-3045) *Deposition, Ex. No. 22*;

10. Untranslated Application Form for Officer (ATINA 3028-3033), *Deposition Ex. No. 21*;

11. Translated Application Form for Officer;

12. Seafarer's Employment Contract (ATINA 3027), *Deposition Ex. No. 23*;

13. Coast Guard 96-Hour Work/Rest History for crewmembers of the M/T ATINA (ATINA 1-4);

14. Photos of Bridge of the M/T ATINA (ATINA 5-18);

15. M/T ATINA Passage Plan (ATINA 41-59), *Deposition Ex. No. 13*;

16. All Publications incorporated and/or referenced in the M/T ATINA Passage Plan, including, but not limited to:

    a. the E-NP 5012 Admiralty Guide to ENC Symbols Used in ECDIS (ABP 435-542);
    b. U.S. Coast Pilot 5 (ABP 525-1140);
    c. Mississippi River Bridge Procedures Guide (ABP 303-434); *Deposition Ex. No. 49*;

17. Besiktas SMS Operations Manual Index (ATINA 60);

18. Sea Trial Report for M/T ATINA (ATINA 100-363);

19. Maneuverability Information for M/T ATINA (ATINA 364);

20. M/T ATINA International Load Line Certificate (ATINA 365-368);

21. Continuous Synopsis Records for M/T ATINA (ATINA 369-371, 375-377, 378-380);

22. Class Certification for M/T ATINA (ATINA 372-375);

23. Certificate of Safety Compliance for M/T ATINA (ATINA 381-382);

24. M/T ATINA Pilot Card (ATINA 383-386);

25. Unsigned Pilot Exchange Card (ATINA 2022-2023);

26. M/T ATINA General Arrangement (ATINA 387);

27. M/T ATINA Deck Logs for 10/15/2020 - 10/17/2020 (ATINA 388-390), *Deposition Ex. No. 41, Deposition Ex. Nos. 57, 58*;

28. M/T ATINA Engine Logs for 10/15/2020 - 10/17/2020 (ATINA 391-393, 2024-2032);

29. Official Log Book for the M/T ATINA (ATINA 394, 2035-2040);

30. Bridge Bell Book 10/14/2020 - 10/17/2020 (ATINA 395-397);

31. Photo of M/T ATINA Post-Allision with Draft Marks (ATINA 406);

32. Oil Record Book 09/29/2020 - 10/17/2020 (ATINA 407-418);

33. M/T ATINA Capacity Plans (ATINA 419);

34. M/T ATINA Ballast Water Operation Records (ATINA 420-421);

35. M/T ATINA Ballast Water Management Report (ATINA 422-427);

36. M/T ATINA Revised Ship Inspection Reports (SIRE) (ATINA 428-461, 2041-2075), *Deposition Ex. No. 36*;

37. M/T ATINA Bell Log Tape from day of incident (ATINA 488-489);

38. Weather Reports from Date of Allision (ATINA 462-465);

39. General and Midship Arrangements of M/T ATINA (ATINA 485-486);

40. M/T ATINA Ship Particulars (ATINA 3128);

41. M/T ATINA Bridge Layout (ATINA 3129-3137);

42. Certificate for Anchor Chain (ATINA 3138-3140);

43. Certificate for Anchor (ATINA 3141-3143);

44. Certificate for Windlass (ATINA 3144-3146);

45. Instruction Manual for Hydraulic Deck Machinery (ATINA 2085-2500);

46. Shell Expansion Plan (ATINA 487);

47. ABS Survey After Construction Vessel Report (ECGS Installation) (ATINA 2691-2695);

48. Drydock ABS Survey Report (ATINA 2696-2736);

49. Standard Club - Certificate of Entry (ATINA 2737-2740), *Deposition Ex. No. 29*;

50. Besiktas Main Manual (ATINA 3238-3748);

51. Besiktas Safety Manual (ATINA 4087-4204);

52. Besiktas Navigation Manual (ATINA 3760-3762, 3851-4086);

53. Besiktas Emergency Manual (ATINA 4305-4657);

54. Main Manual SMS Definitions of Essential Terms (ATINA 3841-3850);

55. E-mail correspondence related to the incident in suit (ATINA 490-2012), *Deposition Ex. Nos 20, 38, 39, 60*;

56. E-mail correspondence dated 12/25/2020 from Capt. Nazim Sadik Er to Oil Companies, *Deposition Ex. No. 31*

57. M/T ATINA Insurance Cover (ATINA 3219-3221);

58. Master's Handover Checklist (ATINA 2076-2080), *Deposition Ex. No. 43*;

59. Master/Pilot Information Exchange Signed by Capt. Er (ATINA 2081-2082);

60. M/T ATINA Ship Visitor Log (ATINA 3151-3152), *Deposition Ex. No. 18*;

61. Bridge Checklist for Anchoring and Anchor Watch (ATINA 2083-2084);

62. USCG Report of Marine Casualty / Crew Alcohol Results / USCG Involved Persons Addendum (ATINA 2501-2510);

63. M/T ATINA Crewmember Witness Statements (with translation) (ATINA 2511-2518);

64. Drug and Alcohol Test Results, Logs, and Certificates (ATINA 2519-2599);

65. MT ATINA Sale Form - Atina Maritime to Hanzhou 1 Ltd. (ATINA 2648-2667);

66. Trust Deed re: MT ATINA Bareboat Charter Agreement - Managers Undertaking Ciner (ATINA 2600-2622);

67. Trust Deed re: MT ATINA Bareboat Charter Agreement - Managers Undertaking Besiktas (ATINA 2623-2647);

68. Appendix 1 to Atina/Besiktas' Management Agreement (ATINA 3222-3238), *Deposition Ex. No. 28*;

69. Trust Deed re: MT ATINA and MT ISTANBUL Bareboat Charter Agreement (ATINA 2668-2690);

70. Combined Besiktas training certifications, employment records, and documentation for M/T ATINA crewmembers (ATINA 2790-2981, 2985-3127), *Deposition Ex. No. 15*;

71. Capt. Edin Employment Application (Untranslated) (ATINA 2741-2779);

72. Capt. Hürmüzlü Employment Application (Untranslated) (ATINA 2780-2789);

73. Allision Checklist (ATINA 3147-3148);

74. Chartering Questionnaire (ATINA 3153-3160);

75. Combined email correspondence between Besiktas and Vincent Monica with GAC (ATINA 3161-3218);

76. All documents produced by GAC (GAC 1-352), *Deposition Ex. No. 32*

77. Koch Shipping Vessel Delivery Certificates (ATINA LD 1-2, 222);

78. M/T ATINA Voyage Order (ATINA LD 3-10);

79. M/T ATINA Bills of Lading (ATINA LD 11-14, 19-20);

80. Galbraith's M/T ATINA Valuation Survey/Opinion (ATINA LD 21-22);

81. Galbraith's Addendums to Koch Charter (ATINA LD 455-458);

82. Pre-Allision Voyage Files (ATINA LD 320-393);

83. Post-Allision Voyage Files (ATINA LD 394-443);

84. Post-Allision ATINA Crew List (ATINA LD 444-446);

85. Correspondence regarding Sailing Report (ATINA LD 447);

86. ATINA Hire Statements/Invoices from Atina Maritime to Koch Shipping (ATINA LD 448-454);

87. Sten Bulk Commercial Operations Instructions to Master (ATINA LD 225-243);

88. Correspondence regarding M/T ATINA management post-allision (ATINA LD 223-266);

89. Correspondence regarding M/T ATINA Delivery Certificate (ATINA LD 267);

90. Besiktas Authorization Letter to Agents regarding Bills of Lading (ATINA LD 269);

91. Correspondence between Equinor and Capt. Edin regarding voyage instructions prior to allision (ATINA LD 15-16);

92. M/T ATINA Hire Statements/Invoices from Atina Maritime to Koch Shipping (ATINA LD 17-18);

93. Hanzhou - Atina Maritime Bareboat Charter Agreement (ATINA LD 40-97);

94. Atina Maritime - Koch Shipping Time Charter Party Agreement (ATINA LD 98-169);

95. ATINA Crew Lists (ATINA LD 270-273);

96. Besiktas Pre-Allision Statement of Facts (ATINA LD 274-276);

97. Besiktas Post-Allision Statement of Facts (ATINA LD 277-278);

98. GAC and PortLog Statements of Facts (ATINA 491, ATINA LD 279-283), *Deposition Ex. No. 59*;

99. Moran Shipping Agencies Statement of Facts (ATINA LD 284-285);

100. Turkish Translation of Audio Files (ATINA 3816-3818), *Deposition Ex. No. 17*;

101. English Translation of Audio files (ATINA 3819-3822), *Deposition Ex. No. 16*;

102. Capt. Edin Voice Recordings (ATINA 3823-3826);

103. Ciner Certificate of Activity (ATINA 3827-3828);

104. Ciner List of Authorized Signatures (ATINA 3829-3837);

105. WhatsApp Messages (Untranslated and Translated) (ATINA 3838-3840), *Deposition Ex. Nos. 33, 34*;

106. SMS Definitions of Essential Terms (ATINA 3841-3850);

107. Besiktas Organizational Chart (ATINA 4205), *Deposition Ex. No. 4*;

108. Ciner Organizational Chart (ATINA 3804);

109. Capt. Edin Resignation Emails (ATINA 3802, 4206), *Deposition Ex. No. 19;*

110. Capt. Akhtar Email re: Capt. Edin (ATINA 3803), *Deposition Ex. No. 35*;

111. Atina Maritime – Ciner Share Transfer/Association Documentation (ATINA 3805-3815);

112. Email Observation List (ATINA 4207);

113. Koch Shipping List of Observations (ATINA 4208), *Deposition Ex. No. 37*;

114. Capt. Hürmüzlü Maltese Endorsement (ATINA 4209);

115. Capt. Hürmüzlü Acknowledgment of Application (ATINA 4210);

116. Capt. Hürmüzlü CV/References (ATINA 4211-4217);

117. Correspondence regarding vetting inspector (ATINA 4218-4226);

118. Capt. Edin Statement (ATINA 4227);

119. Vessel Incident Report (ATINA 4228-4242), *Deposition Ex. No. 24*;

120. Vessel Incident Report (ATINA 4251-4266), *Deposition Ex. No. 25*;

121. Vessel Incident Report (ATINA 3149-3150);

122. Vessel Incident Report (ATINA 4274-4291), *Deposition Ex. No. 26*;

123. Cox First Report of Incident (COX 72638);

124. Correspondence regarding M/T ATINA IMO Open Incident Report (ATINA 4270-4272);

125. Correspondence regarding Valero disapproval of M/T ATINA (ATINA 4273), *Deposition Ex. No. 56*;

126. Correspondence regarding Final Investigation Report (ATINA 4292-4298, 4243-4250), *Deposition Ex. No. 45*;

127. Time lapse video from the M/T ATINA of allision (ATINA 4658);

128. Capt. Hürmüzlü Malta Endorsement – Jan 2022 (ATINA 4301);

129. Right Ship Email 10/17/2020 (ATINA 4302-4304), *Deposition Ex. No. 53*;

130. Right Ship Email 03/09/2022 (ATINA 4267-4269, 4299-4300), *Deposition Ex. Nos. 54, 55*;

131. Cox Crew Witness Statements (COX 238-242);

132. Video from Platform of M/T ATINA Post-Allision (COX 72640);

133. GAC Job Control Sheet (GAC 2-3);

134. M/T ATINA Application Unlading/Lading/Overtime Services (GAC 9-10);

135. GAC Letter of Guarantee/Invitation/Approval to Board for Capt. Hürmüzlü (GAC 25);

136. Correspondence between Vincent Monica and/or GAC and the M/T ATINA or any of the Atina interests (GAC 36-261, 265-294, 317-352), *Deposition Ex. Nos. 40, 44*;

137. Timeline of discharging operation (GAC 295-298);

138. Pictures of platform structural damage (COX 1-183, 260-276, 376-397);

139. Platform building/floor plans (COX 184-235);

140. Post-allision photographs from platform (COX 277-280, 72641);

141. Cox Aids to Navigation Report – Platform 57B (COX 236-237);

142. 10/2020 BSEE Report on SP-57 B (COX 243-259, 72611-72627);

143. SP 57 B Onboard Roster for 10/16/2020 (COX 281);

144. WMP-61 and WD-73 Weather Forecasts (COX 282-289);

145. SP-57 B Oceaneering Asset Integrity Inspection Diagrams (COX 290-291);

146. Platform Video Surveys (COX 292-302, 309-375, 398-404, 70522-70535, 72630-72636);

147. Capt. Hürmüzlü – Master Statement of Incident (COX 303);

148. Copy of Capt. Hürmüzlü's Passport (COX 308);

149. Statement of Compliance for Inventory of Hazardous Materials (COX 305-307);

150. IMO Crew List - M/T ATINA (COX 304);

151. BSEE Submittal Report, Application for Structural Modification Post-Allision (COX 405-410);

152. SACS Files for 2013 Repairs to SP-57 Platform (COX 411-412);

153. Scheduled 2023 Platform Inspection (COX 72656);

154. Platform Historical Modifications (COX 413-1602);

155. Platform Well Files (COS 1603-70055);

156. NSAI Engineering Reserve Work Notes (COX 70056-70488);

157. Authorizations for Expenditures (COX 70489-70521);

158. Post-Allision SP 57-B Structural Damage Inspection Report (COX 70536-70605);

159. Post-Allision SP 57-B Topside Damage Inspection Report (COX 70606-70676);

160. Pre-Allision SP 57-B Topside Inspection Reports (COX 70677-71785);

161. M&H Topsides Inspection Report Post-Allision (COX 72642-72655);

162. 2021 Post-Allision SP 57-B Anode Survey Inspection Report (COX 71786-71892);

163. SP 57-B OSTS Annual Inspection Report Raw Data (COX 71893);

164. Any and all pre-allision BSEE Incidents of Non-Compliance (COX 71894-71899);

165. 2019-2020 SP 77 Monthly Production Raw Data (COX 71900);

166. SP 78 Field Roll Forward Production Data as of 11/2020 (COX 71901-71904);

167. SP 78 Field Study Data and Additional Documentations (COX 71905-72494);

168. SP 78 Field and Platform B Reserve Summaries (COX 72495-72496);

169. SP 78 Field ARO Summary (COX 72497);

170. SP 78 Total MY w/ YE Price Deck – Reserves (COX 72498-72511);

171. SP 78 Report Rate Time Plots (COX 72512-72573);

172. SP 78 Report Oneliners (COX 72574);

173. Summary Projection of Reserves and Revenue as of June 30, 2020 (COX 72575-72609);

174. SP 78 Report Stack Plot (COX 72610);

175. SP 57 Anomaly Location Drawings (COX 7268-72627);

176. Statement of Roger L. Brown (COX 72637);

177. SP 57 B Morning Production Report (COX 72639);

178. Spot Inspection by BSEE (COX 72657);

179. SP 77 B Platform Specifications (COX 72684-72689);

180. BSEE Inspection Summaries (COX 72658-72661);

181. Cox D-99 Form (COX 72662-72664);

182. iSims LLC - Vessel Impact Study following Allision (COX 72665-72683);

183. iSims - SP 57 B Scope of Work (COX 72690-72694);

184. iSims - SP 57 B Safe to Board Engineering Assessment Report COX 72695-72735);

185. Expert Summary of Vessel Impact Damages on SP 57B (COX 72736-72770);

186. SP 57 B Structural Modification/Platform Verification Program (COX 72771-72786);

187. SP 78 2019 Operating Spreadsheet (COX 78871-78873);

188. Cox Operating Lease Documentation (COX 72874-73060);

189. Drilling, Completion, Workover, and Abandonment Well Files (COX 77836-77920);

190. SP 078 2019.12 Service Date (COX 78871);

191. SP 078 2020.12 Service Date (COX 78872);

192. SP 078 2020 October 2020 to September 2021 (COX 78873);

193. Documentation provided by Oceaneering International, Inc. regarding platform inspections (OCEANEERING 1-3217);

194. M/T ATINA Crew Videos;

195. M/T ATINA ECDIS Playback;

196. United States Coast Guard Vessel Traffic Service Playback;

197. National Traffic Safety Board Docket File Materials and Report;

198. Safety of Life at Sea Convention, Chapter 5, Safety of Navigation – Passage Planning, *Deposition Ex. No. 10*, (ABP 2914-2942);

199. International Maritime Organization (IMO), *Guidelines on Fatigue*, *Deposition Ex. 12*, (ABP 3530-3591);

200. International Convention on Standards of Training Certification and Watchkeeping for Seafarers (ABP 1141-1550);

201. United States Coast Guard Vessel Traffic Service – Lower Mississippi River User Manual (3rd Edition) (ABP 1551-1571);

202. United States Coast Guard Marine Safety Manual Volume II Material Inspection (ABP 1572-2913);

203. International Safety Management (ISM) Code & International Convention for the Safety of Life at Sea (SOLAS) (ABP 2914-2942);

204. NOAA Chart 11361 Mississippi River Delta (78th Edition) (ABP 2943);

205. Maritime Labour Convention (MLC), 2006 (ABP 2944-3055);

206. Marine Safety Manual Volume III Marine Industry Personnel (ABP 3056-3591);

207. IMO Resolution Act 893 (ABP 3592-3598);

208. Curriculum Vitae of Chris Caddell;

209. Curricula Vitae of Capt. Marc. A. Fazioli and/or Capt. Keith Dean;

210. Curriculum Vitae of Captain Prentice "Skip" Strong;

Case 2:20-cv-02845-JTM-DPC   Document 254   Filed 01/13/23   Page 21 of 22

211. Curriculum Vitae of Robert D. Bartlett - Bartlett Engineering;

212. Curriculum Vitae of Michael F. McKenzie - D-O-R Lease Service, Inc.;

213. Curricula Vitae of Patrick S. Ottinger - Ottinger Hebert LLC;

214. Curricula Vitae of Darrell Barker, William LeBoeuf, David Hua, Dan Humphreys and/or Andrew Buckley – ABS Group;

215. Curriculum Vitae of Sean Verret and/or Matthew Couch - Verrified Engineering;

216. Curriculum Vitae of Steve Clavin- Waldemar S. Nelson and Company;

217. Incident Report by Ben Kararick (ABP 3600-03);

218. Video by Ben Kararick of Allision on Chart (ABP 3599);

219. Any pre-employment or post-incident physical, drug test, and/or alcohol tests for any crewmembers aboard the M/T ATINA at the time of the incident;

220. Any and all attachments to any depositions taken in connection with this lawsuit and/or any related matter;

221. Any additional written statements prepared by any witness to the subject incident, identified through future discovery;

222. Any document reviewed or relied upon by any expert retained by any party;

223. Any deposition transcript of any witness that is unavailable for trial;

224. Any document or depositions needed for rebuttal or impeachment;

225. Any document produced in discovery;

226. Any discovery pleadings exchanged between the parties;

227. Any pleadings filed in the record;

228. Any and all other medical records identified through further discovery;

229. Any other discovery exchanged between the parties;

230. Any document obtained through subpoena responses or authorizations, including but not limited to:

    a. GEN STEAM 1-69;
    b. GAC 1-352;

21

      c.  OCEANEERING 1-3217;
      d.  EDG 1-2848;
      e.  NORD-SUD 1-227.

231. Any document produced by any other party in this litigation;

232. Any document needed for rebuttal or impeachment;

233. Any exhibit attached to a deposition;

234. Any document or record listed by any other party in their Initial Disclosures;

235. The stipulations of any party;

236. Any document obtained in response to a subpoena duces tecum issued by any party;

237. Any and all demonstrative exhibits, unknown at this time;

238. Any and all exhibits listed or sought to be introduced by any other party to this litigation;

239. Any document or exhibit identified through further discovery.

ABP reserves the right to amend this Exhibit List as discovery is ongoing.

Respectfully submitted,

*/s/   Jacques P. DeGruy*
Robert R. Johnston, T.A. (#22442)
Jacques P. DeGruy (#29144)
Constance C. Waguespack (#36416)
Courtney E. Crowell (#38708)
**PUSATERI, JOHNSTON, GUILLOT &
GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, Louisiana 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
Robert.Johnston@pjgglaw.com
Jacques.DeGruy@pjgglaw.com
Constance.Waguespack@pjgglaw.com
Courtney.Crowell@pjgglaw.com
**Attorneys for Associated Branch Pilots of the
Port of New Orleans, LLC**