UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**COX OPERATING, LLC**                                        **CIVIL ACTION**

**VERSUS**                                                              **NO: 20-2845**
                                                                                    **c/w 20-2871**

**ATINA M/V ET AL.**                                          **SECTION "H"**

### ORDER AND REASONS

Before the Court are Petitioner Besiktas Likid Tasimacilik Denizcilik Ticaret A.S.'s Motion to Strike (Doc. 356) and Cox Operating, LLC, Energy XXI GOM, LLC, and EPL Oil & Gas, LLC's Motion for Reconsideration (Doc. 355). For the following reasons, the Motion to Strike is **GRANTED**, and the Motion for Reconsideration is **DENIED**.

### BACKGROUND

This action arises out of an allision between the M/V ATINA and the SP 57B offshore platform. In this action, Cox Operating, LLC, Energy XXI GOM, LLC, and EPL Oil & Gas, LLC (collectively "Claimants") bring general maritime negligence and punitive damages claims against Besiktas Likid Tasimacilik Denizcilik Ticaret A.S. ("Besiktas"), the crew and technical

1

manager of the M/V ATINA, for damages sustained by the SP 57B platform.[1] This Court considered summary judgment motions on the issue of punitive damages and found that, even taking the facts in a light most favorable to Claimants, no reasonable trier of fact could award punitive damages.[2] The full facts of this matter are detailed therein.[3]

Claimants now ask this Court to reconsider that holding. They provide the Court with new evidence that they contend creates a material issue of fact as to the issue of punitive damages. Petitioner Besiktas, for its part, moves to exclude that evidence from consideration, arguing that it is not admissible. The Court will consider each Motion in turn.

## LAW AND ANALYSIS

### A. Besiktas's Motion to Strike

Besiktas moves to strike Claimants' Exhibits 1 and 26 submitted in support of their Motion to Reconsideration of Dismissal of Punitive Damages Claims. At the outset, Claimants argue that Besiktas's Motion is procedurally improper because motions to strike under Federal Rule of Civil Procedure 12(f) are limited to pleadings. This Court finds Besiktas's Motion to be proper under Federal Rule of Civil Procedure 56(c)(2). Rule 56(c)(2) provides that on summary judgment "[a] party may object that the material cited to support or

---

[1] Claimants also brought claims against Hanzhou 1 Ltd., as owner of the M/V ATINA, and Ciner Ship Management, as the commercial manager, but this Court dismissed those claims on summary judgment (Docs. 334, 347). Claimants also bring claims against Atina Martime Limited, the bareboat charterer of the M/V ATINA, but this Court dismissed the punitive damages claims against it on other grounds, Doc. 347 at 10, n.22, and Claimants do not ask for reconsideration of that holding.
[2] Doc. 347.
[3] *Id.*

2

dispute a fact cannot be presented in a form that would be admissible in evidence." Because Claimants ask this Court to consider new evidence in reconsidering their Motion for Partial Summary Judgment on punitive damages, Besiktas's Motion is appropriate under Rule 56. Claimants have the burden to show that "the material is admissible as presented or to explain the admissible form that is anticipated."[4]

The exhibits at issue contain excerpts of transcripts of post-allision interviews with the master of the M/T ATINA, Capt. Fuat Onur Hurmuzlu, and the Second Officer of the M/T ATINA, Bertan Pisirici, taken as part of an investigation on behalf of the United States Coast Guard (USCG) and/or the United States National Transportation Safety Board (NTSB). Besiktas argues that the interviews are inadmissible pursuant to 46 U.S.C. § 6308(a), which prohibits any part of a USCG report from being used as evidence in a civil trial, or 49 U.S.C. §1154(b), which prohibits any part of a NTSB report from being admitted into evidence in a civil action.

The parties dispute the applicability of 46 U.S.C. § 6308(a) and 49 U.S.C. § 1154(b) to the interview transcripts at issue. 46 U.S.C. § 6308(a) states:

> Notwithstanding any other provision of law, no part of a report of a marine casualty investigation conducted under section 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.[5]

---

[4] FED. R. CIV. P. 56 cmt.
[5] 46 U.S.C. § 6308(a).

3

49 U.S.C. § 1154(b) similarly provides: "No part of a report of the [NTSB], related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report."[6]

The parties dispute whether the transcripts of the interviews are "part of" the USCG or NTSB report and therefore whether they should be excluded under 46 U.S.C. § 6308(a) or 49 U.S.C. § 1154(b). Judge Barbier addressed this issue with respect to the joint investigation of the Deepwater Horizon oil spill between the Coast Guard and the Bureau of Ocean Energy Management, Regulation, and Enforcement.[7]

> Joint Investigation testimony, photographs, and other material within Volumes I and II [of the Joint Investigation Report] are excluded; though this does not prevent the admission of evidence existing independently of the Joint Investigation or that likely would have been created absent the investigation. "Factual data" displayed or cited within the report are "parts" of the report within the meaning of the statute. The statutory list of findings of fact, opinions, and so forth is illustrative only. Additionally, Joint Investigation witnesses likely provided testimony with inadmissible components. See 46 C.F.R. § 4.19-5 (providing that "strict adherence to the formal rules of evidence is not imperative" at marine casualty investigation hearings). . . . Hearsay exceptions do not make any portions of the Joint Investigation Report admissible. The applicable statute states, "Notwithstanding any other provision of law, no part of a report of a marine casualty investigation ... shall be admissible as evidence...." 46 U.S.C. § 6308(a) (emphasis added). The Federal Rules of Evidence ("FREs") are "provisions of law," and the fact that they address the hearsay problem does not alter the statute's

---

[6] 49 U.S.C. § 1154(b).
[7] In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010, No. MDL 2179, 2012 WL 13026743, at *1–2 (E.D. La. Jan. 26, 2012).

4

broad prohibition against the admission of marine casualty investigation reports and testimony.[8]

This Court finds Judge Barbier's reasoning compelling. The interviews of the ATINA crewmembers by the USCG were taken as part of its investigation of the allision and the facts gleaned therein formed the basis of the USCG's report on the allision.[9] "The investigations of marine casualties and accidents and the determinations made are for the purpose of taking appropriate measures for promoting safety of life and property at sea, and are not intended to fix civil or criminal responsibility."[10] Accordingly, this Court agrees that 46 U.S.C. § 6308(a) and 49 U.S.C. § 1154(b) prevent the use of transcripts of interviews taken by the USCG in the course of an investigation in a civil trial.[11]

For their part, Claimants rely on another case from this district, *Complaint of Danos & Curole Marine Contractors, Inc.*[12] There, the court considered whether photographs taken during a marine casualty investigation were inadmissible pursuant to § 6308.[13] The court concluded that the photographs were not the "conclusory items which the statute seeks to

---

[8] *Id.*

[9] *See* Incardone v. Royal Caribbean Cruises, Ltd., No. 16-20924-CIV, 2020 WL 3507533, at *2 (S.D. Fla. June 29, 2020) ("[B]y cross-referencing the Report and the testimony contained within the interview transcripts, it is particularly apparent that the 'Narrative of Events' as described in the Report derives from the statements made during the course of these investigative interviews.").

[10] 46 C.F.R. § 4.07-1(b); Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co., No. 06-3043, 2007 WL 2874805, at *4 (E.D. La. Sept. 26, 2007).

[11] *See* Gabarick v. Laurin Mar. (Am.), Inc., 406 F. App'x 883, 890 (5th Cir. 2010) ("[I]t is unclear whether the testimony [taken at a Coast Guard hearing while it was investigating a collision] is even admissible in a civil case pursuant to § 6308.").

[12] In re Complaint of Danos & Curole Marine Contractors, Inc., 278 F. Supp. 2d 783, 785 (E.D. La. 2003).

[13] *Id.*

exclude," explaining that "the photographs do not provide findings of fact, opinions, recommendations, deliberations, nor conclusions, instead, they merely illustrate the condition of the objects depicted in the photos as they existed" on the date of the allision and investigation.[14] Important to that case, however, was the fact that the photographs were the only evidence depicting the condition of the vessel on the day of the allision.[15] Subsequent to the USCG investigation but before any other party could perform an inspection, the wiring of the vessel was replaced "materially altering the condition and appearance of the wiring which was the subject of the Coast Guard Report."[16]

Setting aside the obvious difference between photographs and interview transcripts, the opinion in *Complaint of Danos & Curole Marine Contractors, Inc.* is distinguishable because here the parties have not presented any reason why the testimony of the crewmembers of the ATINA could not have been taken independent of the USCG investigation and presented in an admissible form. Accordingly, this Court does not find Claimants' reliance on *Complaint of Danos & Curole Marine Contractors, Inc.* compelling. Besiktas's Motion is granted, and this Court will not consider Exhibits 1 and 26 in deciding Claimants' Motion for Reconsideration of Dismissal of Punitive Damages Claims.

## B. Motion for Reconsideration of Dismissal of Punitive Damages Claims

Claimants have asked this Court to reconsider its decision to dismiss their punitive damages claims under Federal Rule of Civil Procedure 59(e).

---

[14] *Id.*
[15] *Id.*
[16] *Id.*

6

However, because the Court's order dismissing Claimants' punitive damages claims was an interlocutory order, this Motion is properly considered under Rule 54(b). Rule 54(b) states that: "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'"[17] "'[T]he power to reconsider or modify interlocutory rulings is committed to the discretion of the district court, and that discretion is not cabined by the heightened standards for reconsideration' governing final orders."[18]

Claimants argue generally that the Court erred in failing to view the evidence in a light most favorable to them in dismissing their claim for punitive damages. In particular, they contend that the Court erred in making four factual findings. First, Claimants argue that the Court erred in finding that there was no evidence that any representative of Besiktas knew that Captain Hurmuzlu was fatigued or that he had not slept in 52 hours prior to the allision. In so arguing, Besiktas relies on the transcript of Hurmuzlu's interview with the USCG. As previously discussed, this evidence is inadmissible pursuant to 46 U.S.C. § 6308(a) and 49 U.S.C. § 1154(b).

---

[17] Austin v. Kroger Tex., L.P., No. 16-10502, 2017 WL 1379453, at *9 (5th Cir. 2017) (quoting Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990)).
[18] *Id.* (quoting Saint Annes Dev. Co. v. Trabich, 443 Fed. Appx. 829, 831–32 (4th Cir. 2011).

Claimants do not offer any other evidence that any corporate official was aware that Hurmuzlu was fatigued. To be sure, Besiktas was aware of his lengthy travel schedule, but there is no evidence that they were aware that he did not sleep at any point on his flights from Istanbul to New Orleans.

Relatedly, Claimants complain about the Court's finding that there was "no reason for Petitioners to believe that placing Hurmuzlu at the helm of the ATINA created a risk to others."[19] Claimants argue that Besiktas put Hurmuzlu in command of the ATINA at night without following turnover or rest rules when they knew that he was not familiar with the ATINA and that he had never operated a tanker of that size.[20] As the Court previously pointed out, however, Besiktas also knew that Hurmuzlu would be assisted by a river boat pilot, a second officer, and a chief officer in navigating the ATINA to an anchorage location. Even viewing this evidence in a light most favorable to Claimants, it does not rise to the level of conduct meriting an award of punitive damages. Under general maritime law, punitive damages may be available if the plaintiff proves that the defendant's behavior was "so egregious as to constitute gross negligence, reckless or callous disregard for the rights of others, or actual malice or criminal indifference."[21] The Supreme Court has advised that "[p]unitive damages are limited to cases of 'enormity,' that is, where a defendant's conduct is outrageous, owing to gross negligence, willful, wanton, and reckless indifference for others' rights, or even more deplorable conduct."[22] "The theory of a punitive damage award is that the defendant has

---

[19] Doc. 355 (quoting Doc. 347).
[20] Besiktas contests the assertion that Hurmuzlu had never captained a vessel of that size.
[21] Gonzalez v. Sea Fox Boat Co. Inc., 582 F. Supp. 3d 378, 381 (W.D. La. 2022).
[22] Exxon Shipping Co. v. Baker, 554 U.S. 471, 492 (2008).

committed the civil equivalent of a crime."[23] Claimants' allegations amount to garden-variety negligence and are not the outrageous, egregious conduct warranting punitive damages.

Next, Claimants complain about the Court's finding that there was no evidence that Besiktas's actions were motivated by money. In so arguing, Claimants still do not present any such evidence. Instead, they argue that Besiktas's motivation can—and should—be inferred from its actions where Besiktas "disregarded an easy, safe option—changing crew at the dock—in favor of a reckless alternative" of performing a crew change in the middle of Mississippi River.[24] To do so, this Court would have to ignore the testimony of Besiktas's agent to the contrary.[25] Besiktas's agent testified that it did not consider performing the transfer at the Nustar dock, that the plan was to perform the transfer at the Southwest Pass Anchorage, and that the decision was not motivated by money.[26] Claimants have refused to acknowledge that Besiktas was addressing a rapidly changing situation. The captain of its vessel began acting erratically, its initial selection to relieve him did not have the required visa, and then its initial plan to perform the master exchange at the Southwest Pass Anchorage changed either because of the weather or because of the captain's demands to get off the vessel. The most reasonable inference is that it was doing its best to address a fluid situation and not that it was motivated by money. Further, even assuming Besiktas was motivated by

---

[23] Matter of Crosby Marine Transportation, L.L.C., No. CV 17-14023, 2021 WL 1931168, at *4 (E.D. La. May 13, 2021).
[24] Doc. 355.
[25] *See* Doc. 274-3 at 122 (Besiktas's representative stating that there was no financial reason no waiting at NuStar terminal to conduct the captain transfer).
[26] *Id.*

money in its decision-making, its actions were not the outrageous, egregious conduct warranting punitive damages.

Finally, Claimants argue that the Court erred in finding that there was a "collective confusion" between Hurmuzlu and his second officer in the bridge prior to the accident "regarding whether the platform was moving and, if so, in what direction and at what speed."[27] Claimants contend that the confusion was Hurmuzlu's alone and was a result of his fatigue. They argue that the second officer talking to Hurmuzlu likely did not realize that Hurmuzlu was asking questions about the platform because that was "unthinkable" and therefore his answers were identifying a nearby vessel. Accepting Claimants' interpretation of the conversation of the bridge, the second officer was confused about what Hurmuzlu was asking him. Ergo, there was confusion. The Court's statement that there was a "collective confusion" was not error and further had no bearing on the Court's holding.

Accordingly, Claimants have not identified any error of fact committed by this Court in its decision dismissing their claim for punitive damages. They also argue that the Court erred as a matter of law in holding that Besiktas's conduct was not sufficiently egregious. In so arguing, however, they simply rehash arguments already considered and rejected by this Court.

It is well-settled that "in bench-trial cases the district court has greater discretion to grant summary judgment."[28] The Court is permitted to draw inferences from what has been incontrovertibly proven in order to avoid the expense of trial.[29] "The judge may decide that the same evidence, presented to

---

[27] Doc. 355 (quoting Doc. 347).
[28] Jones v. United States, 936 F.3d 318, 323 (5th Cir. 2019).
[29] Nunez v. Superior Oil Co., 572 F.2d 1119, 1123–24 (5th Cir. 1978).

him or her as a trier of fact in a plenary trial, could not possibly lead to a different result."[30] Here, the Court need not resolve any issues of fact to find that there is no presentation of the evidence in which it would find punitive damages are warranted.

## CONCLUSION

For the foregoing reasons, Petitioner Besiktas's Motion to Strike is **GRANTED** and Claimants Cox Operating, LLC, Energy XXI GOM, LLC, and EPL Oil & Gas, LLC's Motion for Reconsideration is **DENIED**.

New Orleans, Louisiana this 20th day of July, 2023.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[30] *Jones*, 936 F.3d at 323.